UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| CARLESTER WASHINGTON TAPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-0046-WTL-WGH |
| ) | |
| C. GOERGEN, Det., ) | |
| OFFICER B.K. WATSON, ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Motions for Summary Judgment
and Directing Entry of Final Judgment**

This action has been consolidated with *Carlester W. Tapp v. Officer B.K. Watson,* No. 3:13-cv-0017-JMS-WGH. Some defendants were dismissed when the complaint was screened in the Entry of August 23, 2012, and other defendants were dismissed when the complaint in 3:13-cv-0017-JMS-WGH was screened in the Entry of May 7, 2013. The remaining defendants are Detective Chris Goergen ("Det. Goergen") and Detective Brian Watson ("Det. Watson") (identified in the complaint as "Officer B.K. Watson"). Plaintiff Carlester Washington Tapp ("Tapp") alleges that the defendants violated his constitutional rights by conducting a search and confining him without probable cause on March 10, 2012.

The defendants seek resolution of Tapp's claims through the entry of summary judgment. Tapp has not opposed the motions.

For the reasons explained in this Entry, the defendants' motions for summary judgment [dkt. nos. 23, 36] are **granted.**

## I. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

As noted, Tapp has not opposed the motions for summary judgment. The consequence of his failure to do so is that he has conceded the defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Tapp as the non-moving party, the following facts are undisputed for purposes of the motions for summary judgment:

At all relevant times, Det. Goergen and Det. Watson were employed by the Evansville Police Department ("EPD"). On or about March 9, 2012, EPD Detective T. Seibert ("Det. Seibert") received information from a confidential source that occupants of 1800 S. Garvin, Evansville, Indiana, were engaged in illegal drug activity and that firearms were located

throughout the apartment. Upon information and belief, Det. Seibert suspected that the tenant of 1800 S. Garvin was a convicted violent felon and was violating Indiana gun control laws. Based upon the confidential source's information, Det. Seibert applied for and received a search warrant for 1800 S. Garvin for firearms and ammunition.

Prior to executing the warrant, Det. Watson and another officer of the EPD conducted surveillance on the apartment complex for approximately two hours. During their surveillance, the officers observed Tapp, among others, freely enter and exit both 1800 S. Garvin and 1802 S. Garvin. The officers observed Tapp, wearing a red shirt and carrying a light colored backpack, enter the rear of 1800 S. Garvin. Shortly thereafter, the officers observed Tapp, carrying the same light colored backpack, exit the front door of 1800 S. Garvin and enter 1802 S. Garvin. 1800 and 1802 S. Garvin are located within a family housing complex and within 1,000 feet of a public park.

Based upon their observations, training, experience, and the confidential source's information, the officers suspected that there was a relationship between 1800 and 1802 S. Garvin and that the occupants of 1800 and 1802 S. Garvin were engaged in, among other things, illegal drug activity. Accordingly, on March 9, 2012, the officers, along with the S.W.A.T. and A.T.F. taskforce, executed the search warrant on 1800 S. Garvin and obtained a digital scale, five bags of marijuana and a shotgun.

As detectives executed the search warrant on 1800 S. Garvin, Det. Goergen conducted a "knock and talk" at 1802 S. Garvin. Stephen Mitchell, an occupant of 1802 S. Garvin, consented to and/or otherwise allowed Det. Goergen and other officers to enter. Once inside 1802 S. Garvin, Det. Goergen smelled the strong odor of burnt marijuana. Det. Goergen was told by Mitchell that no one was inside the kitchen area of 1802 S. Garvin. Shortly after Det. Goergen

entered the kitchen, the 6'04", 315 lbs. Tapp appeared. Det. Goergen asked Tapp if he had any weapons or illegal narcotics. With Tapp's consent, Det. Goergen searched Tapp. The search revealed approximately $450.00 cash and a yellow plastic baggie filled with green leafy substance. Det. Goergen arrested Tapp at 1802 S. Garvin for possession of marijuana and for suspected dealing in marijuana within a family housing complex, pursuant to Indiana Code § 35-48-4-10(b)(2).

Det. Watson then applied for and obtained a search warrant for 1802 S. Garvin. The search of 1802 S. Garvin revealed a light colored backpack which contained a 5XL shirt and a piece of paper with "Carlester" written on it. The backpack also contained a scale and approximately 63 grams of a green leafy substance that field-tested positive for THC. The Vanderburgh Superior Court held a probable cause hearing on Tapp's arrest on March 10, 2012. The trial court found that probable cause existed for Tapp's arrest as to all counts, ordered him held in the Vanderburgh County Jail, and set Tapp's bond at $1,000.00. Specifically, the Case Chronology Summary for 82D02-1203-MC-00296, which was the original cause number under which the State filed the Affidavit of Probable Cause, states as follows:

> Affidavit of probable cause filed. Probable cause hearing held 3-10-12; probable cause found; bond set at $1,000 cash or $10,000 surety; next appearance set for 3-14-12 at 9:30 for state to file formal charges.

The State thereafter filed formal charges against Tapp in 82D02-1203-FC-00280 for Dealing in Marijuana pursuant to Ind. Code § 35-48-4-10(B)(2). A trial by jury was held on May 14 and May 15, 2012, and Tapp was found not guilty.

### B. Analysis

Tapp's constitutional claims are necessarily brought pursuant to 42 U.S.C. § 1983. "To state a valid cause of action under § 1983, a plaintiff must demonstrate that: (1) the defendant(s)

deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law." *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998).

Tapp alleges that the defendants violated his Fourth Amendment rights when they searched and arrested him at 1802 S. Garvin. "The Fourth Amendment, applicable through the Fourteenth Amendment to the States, provides: 'The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized.'" *Bailey v. United States,* 133 S.Ct. 1031, 1037 (2013) (*quoting* U.S. Const. amend. IV). In other words, the Fourth Amendment prohibits unreasonable searches and seizures. "To be deemed reasonable, a warrantless arrest made in public must be supported by probable cause." *Gutierrez v. Kermon,* 722 F.3d 1003, 1007 (7th Cir. 2013). Det. Georgen and Det. Watson argue that qualified immunity protects them from liability in this case.

"[Q]ualified immunity provides shelter for officers who have 'arguable probable cause' to arrest—i.e., those officers that reasonably but mistakenly believe they have probable cause." *Gutierrez,* 722 F.3d at 1008. "Qualified immunity affords an even greater level of protection by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Id.* (internal quotation omitted). In this case, information obtained from a reliable confidential informant indicated that the occupants of 1800 S. Garvin were involved in illegal drug activity and firearms were located in the apartment. A search warrant was obtained. Before executing the search of 1800 S. Garvin, Det. Goergen and other officers observed 1800 S. Garvin for two hours and noticed that individuals, including Tapp, moved freely between that apartment

and 1802 S. Garvin. Based on the information from the confidential informant and the observations of 1800 and 1802 S. Garvin, a reasonable officer could have believed that a search and arrest of Tapp would be supported by probable cause. Under these circumstances, the defendants are entitled to qualified immunity even if they mistakenly believed they had probable cause.

In addition, after a hearing was conducted on March 10, 2012, a judge found probable cause existed for Tapp's arrest. *See Fleming v. Livingston County, Ill.,* 674 F.3d 874, 878 (7th Cir. 2012) (if an officer actually had probable cause to arrest a suspect, then a claim for false arrest under the Fourth Amendment is foreclosed); *see also Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (probable cause is an absolute defense to any § 1983 claim against police officers for wrongful arrest). "A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Fleming*, 674 F.3d at 878-79 (internal quotation omitted). "This standard does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Id.* at 879 (internal quotation omitted). Because probable cause existed and the defendants did not act in an unreasonable manner, Tapp's Fourth Amendment claims are barred.

More specifically, as to any claim of unlawful search, Det. Goergen asked Tapp if he could search him for weapons and illegal narcotic drugs. Tapp consented to the search. When consent is freely and voluntarily given to a search, no warrant is required. *United States v. Saucedo,* 688 F.3d 863, 865 (7th Cir. 2012). Even if Tapp had not consented, the smell of marijuana and the other circumstances leading up to Det. Goergen entering 1802 S. Garvin

provided probable cause to believe Tapp possessed and was dealing in the drug. Det. Goergen is entitled to judgment in his favor as to any claim of an unlawful search or arrest of Tapp.

Tapp has presented no evidence showing a genuine issue of material fact as to the constitutionality of his search and arrest. Therefore, Det. Goergen and Det. Watson are entitled to summary judgment as a matter of law.

### III.  Conclusion

For the reasons set forth above, the defendants' motions for summary judgment [dkt. nos. 23, 36] must be **granted.** Judgment consistent with this Entry and with the Entry of August 23, 2012, and with the Entry of May 7, 2013, in 3:13-cv-0017-JMS-WGH, shall now issue.

**IT IS SO ORDERED.**


Date:   10/02/2013

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

CARLESTER W. TAPP, 1321 S. Alvord Blvd., Evansville, IN 47714